FILED
IN CLERKS OFFICE
2014 DEC 15 PM 2 27
U.S. DISTRICT COURT
DISTRICT OF MASS.

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

ANDREW and MELISSA KAYE, individually, and as the Administrators of the Estate of Joshua Kaye,

Plaintiffs,

vs.

RAIN CROW RANCH, LLC, a Missouri Limited Liability Company, RAIN CROW RANCH AMERICAN GRASS FED BEEF, LLC, a Missouri Limited Liability Company; FRUITLAND AMERICAN MEAT, LLC, a Missouri Limited Liability Company, and WHOLE FOODS MARKET GROUP, INC. a Delaware corporation,

Defendants.

CASE NO.

COMPLAINT FOR DAMAGES

JURY DEMAND

**COMPLAINT**

NOW COME the Plaintiffs, ANDREW and MELISSA KAYE, individually, and as the Administrators of the Estate of Joshua Kaye, by and through undersigned counsel of record, and bring this Complaint against Defendants, Rain Crow Ranch, LLC, Rain Crow Ranch American Grass Fed Beef, LLC, Fruitland American Meat, LLC, and Whole Foods Market Group, Inc., and hereby state, allege, and complain as follows:

1. This is an action for damages relating to the Defendants' manufacturing, packaging, labeling, preparing, distributing, marketing, advertising, promoting, supplying and/or selling defective and unsafe beef to the Plaintiffs.

**PARTIES**

2. The Plaintiffs, Melissa and Andrew Kaye, are the mother and father of Joshua Kaye, and are the properly appointed Administrators of his Estate. At the time of Joshua's death on July 7, 2014, and at all times relevant to this action, Joshua resided with his mother and father in Braintree, Norfolk County, Massachusetts. Based on their relevant residencies, Melissa and Andrew Kaye are both citizens of Massachusetts.

3. The Defendants, Rain Crow Ranch, LLC, Rain Crow Ranch American Grass Feed Beef, LLC, and Fruitland American Meat, LLC (collectively, "Rain Crow Ranch Defendants"), are closely-owned companies that variously, respectively, and together raise, harvest, process, and sell grass-fed cattle and beef products. These companies are owned and operated by Mark and Patricia Whisnant. According to a company website,

> Cattle produced by Rain Crow Ranch are processed in the family owned and operated processing facility, located within two hours of the ranch in Jackson, Missouri. The plant is solely dedicated to processing grassfed beef from Rain Crow Ranch. This assures that our grassfed beef is treated with respect for the animals, is of the highest quality and is handled with upmost attention to details of food safety. The Whisnant family oversees every aspect of production from their pastures to your plate. No one cares more about the quality and safety of the protein on your plate.[1]

4. The Rain Crow Ranch Defendants own and operated a farm located in Doniphan, Missouri, while its Fruitland American Meats processing facility is located in Jackson, Missouri. Each of these companies is organized and exists, and at all times relevant to this action, was existing, under the laws of the State of Missouri. These Defendants also are headquartered, and have their principal place of business, in Missouri. Accordingly, the Rain Crow Ranch Defendants are citizens

---

[1] http://www.raincrowranch.com/fruitland/ (last visited on September 22, 2014).

of the State of Missouri.

5. The grass-fed beef products that the Rain Crow Ranch Defendants raise, process and sell are distributed in and to at least fourteen states, according to its website. In Massachusetts, Rain Crow Ranch grass-fed beef products are available at twenty-three locations, all but two of which are Whole Foods Markets, including the South Weymouth store where the product consumed by the decedent was purchased.

6. The Rain Crow Ranch Defendants also advertise, including by and through one or more websites,[2] grass-feed beef and other products for sale in the State of Massachusetts, both identifying the location of retailers where these products can be purchased, but in also selling products directly to customers in Massachusetts through an online store at http://www.americangrassfedbeef.com/ This online store prominently features the Rain Crow Ranch logo, and the store can also be accessed via a link on the Rain Crow Ranch website.

7. By its distribution and sale of grass-fed beef products, through retailers in Massachusetts and its own websites, and through its online advertising and sale of its grass-feed beef products, the Rain Crow Ranch Defendants, at all times relevant to this action, had persistent and systematic contacts with the State of Massachusetts, in fact doing business in the State of Massachusetts, and purposely availing themselves to the protections and benefits of Massachusetts law.

8. The Defendant, Whole Foods Market Group, Inc. ("Whole Foods") is a company that, according to its website, "sells the highest quality natural and organic

---

2 *See, e.g.,* http://www.raincrowranch.com (last visited on September 22, 2014).

products available."[3]

9. Whole Foods is incorporated, organized, and exists under the laws of Delaware, with its corporate headquarters and principal place of business in Austin Texas. As such, at all time relevant to this action, Whole Foods is and was a citizen of the State of Texas.

10. Whole Foods has a Regional Office located in Cambridge Massachusetts at 125 Cambridge Park Drive, Cambridge, Massachusetts, 02140. Further, the Defendant owns and operates twenty-nine Whole Foods Markets located within the Massachusetts, including the one at 35 Pleasant Street, South Weymouth, Massachusetts, 02190. It was at the South Weymouth store that the contaminated ground beef that the decedent consumed was sold.

11. At all times relevant to this action, the Defendant was licensed and doing business in Massachusetts by and through the operations of its Whole Foods Markets, and the manufacture, distribution, and sale of food products at these locations to the public.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy far exceeds $75,000.00, exclusive of interest and costs, and because the action is one between citizens of different states, thus satisfying the requirements of complete diversity.

13. Venue in the United States District Court for the District of Massachusetts is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions

---

[3] http://www.wholefoodsmarket.com/mission-values/core-values (last visited on September 22, 2014)

giving rise to the Plaintiffs' claims and causes of action occurred in this judicial district, and because all of the Defendants are subject to personal jurisdiction here.

## FACTUAL ALLEGATIONS

### *E. coli* O157:H7

14. *Escherichia coli* is the name of a common family of bacteria, most members of which do not cause human disease. The *E. coli* O157:H7 bacteria, unlike the vast majority of *E. coli* family members, are pathogenic. Specifically, *E. coli* O157:H7 can cause painful, bloody diarrhea (hemorrhagic colitis) in humans. This bacteria can also cause death, especially in the elderly, children, and those who are for some reason immune-suppressed.

15. After someone ingests a sufficient quantity of *E. coli* O157:H7 (also known as the infectious dose), the bacteria attaches to the inside surface of the large intestine and initiates an inflammatory reaction. The result is the bloody diarrhea and abdominal cramps characteristic of this intestinal illness.

16. A wide spectrum of disease is possible as a result of an *E. coli* O157:H7 infection, extending from mild, and non-bloody diarrhea, to severe diarrhea that is grossly bloody and accompanied by severe abdominal pain.

17. While the acute symptoms usually resolve without serious complications within seven to ten days, with further convalescence taking up to weeks, an *E. coli* O157:H7 infection can also develop into hemolytic uremic syndrome, a life-threatening condition for which there is no known treatment.

### The Whole Foods Market *Escherichia coli* Outbreak

18. The United States Department of Agriculture's Food Safety and Inspection Service

(FSIS) was notified of an investigation of *E. coli* O157:H7 illnesses on June 25, 2014.

19. Working in conjunction with the Massachusetts Department of Public Health and the Centers for Disease Control and Prevention (CDC), FSIS determined that there was a link between ground beef purchased at Whole Foods Market and this illness cluster.

20. Based on epidemiologic investigation, three case-patients were identified in Massachusetts, with illness onset-dates ranging from June 13 to June 25, 2014. Tragically, the illness of Joshua Kaye, the decedent, was one of these three patients.

21. Traceback investigation indicated that all three case-patients consumed ground beef purchased from two Whole Foods Market locations prior to illness onset.

22. Both Whole Foods Market locations in Massachusetts, South Weymouth and Newton, recalled 368 pounds of ground beef products because of the risk of contamination with *E. coli* O157:H7 and the significant public health threat thus created.

23. This was not the first time that Whole Foods has initiated a recall because its ground beef had been shown to be contaminated with *E. coli* O157:H7. Specifically, in a News Release dated August 8, 2008, Whole Foods announced "a voluntary recall in select states of the ground beef it has sold between June 2 and August 6 because of concern that it may be contaminated with E. coli O157:H7."

24. As with the current recall and outbreak, the contamination of the ground beef made and sold at the Whole Foods Market was the result of its purchase and use of contaminated raw materials.

25. This was also not the first time that Whole Foods Markets in the Northeast received and sold recalled beef products that Fruitland American Meat had processed and sold. Specifically, on June 11, 2014, a FSIS News Release announced a Class II Recall of

"approximately 4, 012 pounds of fresh beef products because the dorsal root ganglia may not have been completely removed," in violation of safety regulations intended to reduce the threat of mad cow disease."[4]

26. Upon information and belief, based in part on information originating from Whole Foods, the recalled ground beef—including that which caused Joshua Kaye's death— had been manufactured by Whole Foods using grass-fed beef raised, processed, and sold by the Rain Crow Ranch Defendants. In its Massachusetts stores, including the South Weymouth store, Whole Foods touts Rain Crow Ranch as a supplier of grass-fed beef products.

**The Plaintiffs' Purchase of the Contaminated Ground Beef**

27. The Plaintiffs Melissa and Andrew Kaye purchased the contaminated ground beef that caused their son's death at the South Weymouth Whole Foods Market where the Defendant Whole Foods manufactured and sold that particular product.

28. The Plaintiffs Melissa and Andrew Kaye purchased the Whole Foods ground beef based on assurances of high quality and safety made by Whole Foods, assurances that caused the Plaintiffs Melissa and Andrew to reasonably believe that the ground beef was not only free of pathogens, as represented, but that grass-fed beef was of higher quality, healthier, and safer than ground beef manufactured with non-grass-fed beef.

29. The Rain Crow Ranch Defendants, among other things, have represented that the grass-fed beef products that they make and sell are a "much safer, better product," and "better for the health and safety of the consumer."

30. Although the ground beef that the Plaintiffs Melissa and Andrew Kaye purchased at

---

4 *See* http://www.fsis.usda.gov/wps/wcm/connect/FSIS-Content/internet/main/topics/recalls-and-public-health-alerts/recall-case-archive/archive/2014/recall-034-2014-release (last visited on September 23, 2014).

Whole Foods Market was more expensive than much of the ground beef available for sale at other grocery stores, the Plaintiffs purchased this ground beef based on the belief that it was of a superior quality and safety relative to other ground beef available.

**Joshua Kaye's *Escherichia coli* Infection and Resulting Death**

31. On June 17 and June 21, 2014, Joshua Kaye consumed grass-fed ground beef that was purchased at Whole Foods Market located in South Weymouth, Massachusetts.

32. Joshua began experiencing nausea, vomiting, stomach cramps, fever, fatigue and headache—symptoms indicative of *E. coli* infection—on June 25, 2014. Approximately two days later, he began to suffer from bloody diarrhea, a troubling and scary symptom that prompted his parents to call Joshua's pediatrician. It was at this point that the pediatrician recommended that Joshua be taken to the emergency room for evaluation.

33. Following the pediatrician's recommendation, his parents drove Joshua to the South Shore Hospital emergency room on June 28, 2014. From there, Joshua was taken by ambulance to Boston Children's Hospital, where he was admitted later that day.

34. As his condition worsened, it became apparent that Joshua had developed HUS, a deadly complication of an *E. coli* O157:H7 infection. Joshua remained hospitalized, suffering intensely, for ten days—from June 28 through July 7, 2014—until his tragic death.

35. A stool sample taken from Joshua Kaye resulted in an *E. coli* O157:H7 positive culture that identically matched the Whole Foods Market *E. coli* O157:H7 outbreak strain.

**Melissa and Andrew Kaye's Injuries**

36. During the ten agonizing days that their son remained hospitalized before his death, Melissa and Andrew Kaye were required to arrange childcare for their other two children, and make other last-minute arrangements necessary to their being at the hospital non-

stop.

37. Witnessing their child suffer for thirteen days caused Melissa and Andrew Kaye near-incalculable pain, anguish, physical harm and suffering, creating searing memories that will haunt them both forever. Among horrors that these parents were forced to witness and endure, there was seeing Joshua go into cardiac arrest, and then watching the lengthy resuscitation effort. Joshua also spent much of his waking hours begging and pleading for water, a detail now permanently etched into their minds.

38. As a result of the suffering that their son endured, and which they were both forced to witness and endure too, Melissa and Andrew Kaye were injured beyond repair, and face now days that are waking nightmares. Something as simple as sitting down to eat as a family is now no longer an enjoyable family moment, but one fraught with fear, anxiety, and despair.

## CAUSES OF ACTION

## COUNT I - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

39. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

40. The Defendants are product sellers, with the Defendant Whole Foods having sold grass-fed ground beef to the Plaintiffs, and with the Rain Crow Ranch Defendants having sold Whole Foods the raw materials used to make the ground beef sold to the Plaintiffs.

41. By the respective sale of their products, the Defendants impliedly warranted that the products were fit for the ordinary purpose for which such goods are used. Specifically, each Defendant impliedly warranted that the meat products that they manufactured and sold were safe, wholesome, fit for human consumption, neither defective nor

unreasonably dangerous, and not otherwise contaminated with *E. co*li O157:H7.

42. By the respective sale of their products, the Defendants also impliedly warranted that the meat was not adulterated within the meaning of the Federal Meat Inspection Act (FMIA) and all related regulations. The presence of *E. coli* O157:H7 in ground beef, or in raw materials intended for, or used for, the manufacture of ground beef is adulterated as a matter of law.

43. The meat products that the Defendants sold, as alleged above, were contaminated with *E. coli* O157:H7 at the time the product left their respective control. Given the fact of their products being contaminated with *E. coli* O157:H7 at the time the product left the control of each, each Defendant breached its implied warranties of merchantability.

44. As a result of each Defendant's breach of its implied warranties, Joshua Kaye was killed, having consumed ground beef contaminated with *E. coli* O157:H7. Had the Defendants not each breached its implied warranties, Joshua Kaye would not have been infected with *E. coli* O157:H7, and he would not have died. Similarly, had the Defendants not caused the death of their son, the Plaintiffs Melissa and Andrew Kaye would not have been injured either.

45. In light of the allegations set forth above, the Defendants are liable to the Plaintiffs for each having breached the implied warranty of merchantability, and for all damages that were proximately caused as a result of these breaches.

**COUNT II – BREACH OF WARRANTY IN VIOLATION OF M.G.L. ch. 93A**

46. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

47. By their breach of warranties and negligence, as alleged above, the Defendants, Whole

Foods and Rain Crow Ranch, committed unfair and deceptive acts in violation of chapter 93A, Sections 2 and 9 of Massachusetts General Laws. More specifically:

a. Whole Foods committed unfair and deceptive acts or practices by and through its marketing, advertising, promoting and sale of grass-fed beef as wholesome, safe, pathogen-free, and fit for consumption, despite the fact that the ground beef sold to the Plaintiffs was, in fact, contaminated with *E. coli* O157:H7 and, as a result, was unwholesome, unsafe, not pathogen-free, and not fit for consumption.

b. Rain Crow Ranch committed unfair and deceptive acts or practices by and through its marketing, advertising, promoting and sale of grass-fed beef as "healthier meat," "better for your health," "better for the environment," and "the healthiest grass-fed beef available," despite the fact that the grass-fed beef sold to Whole Foods for use in making ground beef, resulting in the sale to the Plaintiffs of ground beef that was contaminated with *E. coli* O157. Because the grass-feed beef sold to Whole Foods, and by extension sold to the Plaintiffs, was contaminated with *E. coli* O157:H7, the beef, was not "better for your health," "better for the environment," or "the healthiest grass-fed beef available," in violation of the express warranties, advertisement, and marketing of the product.

48. As a result of their respective unfair and deceptive acts, the Defendants caused the Plaintiffs to suffer severe damages, in violation of M.G.L. ch. 93A. The Plaintiffs are therefore entitled to not only compensatory damages, but punitive damages of double or treble the damages, and attorneys' fees.

**COUNT III – BREACH OF M.G.L. ch. 93A**

49. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully

set forth here in support of this cause of action.

50. On November 5, 2014, Plaintiffs, through counsel, issued a demand letter to Rain Crow Ranch pursuant to and in compliance with the requirements of M.G.L. ch. 93A. Rain Crow Ranch or its agent, representative, or entity authorized to accept service on its behalf received Plaintiffs' M.G.L. ch. 93A demand on November 6, 2014.

51. Rain Crow Ranch failed to respond to Plaintiffs' November 5, 2014, demand letter with a written offer of settlement pursuant to M.G.L. ch. 93A §9(3).

52. On November 5, 2014, Plaintiffs, through counsel, issued a demand letter to Whole Foods, pursuant to and in compliance with the requirements of M.G.L. ch. 93A. Whole Foods or its agent, representative, or entity authorized to accept service on its behalf received Plaintiffs' M.G.L. ch. 93A demand on November 6, 2014.

53. Whole Foods failed to respond to Plaintiffs' November 5, 2014, demand letter with a written offer of settlement pursuant to M.G.L. ch. 93A §9(3).

54. As a result of the Defendants' unfair and deceptive settlement practices and failure to respond with a written offer of settlement pursuant to M.G.L. ch. 93A §9(3), the Plaintiffs are entitled to double or treble damages, costs and attorneys' fees.

## COUNT IV - NEGLIGENCE

55. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

56. The Defendant Whole Foods is manufacturer of the adulterated ground beef that caused the death of Joshua Kaye and the resulting injuries to his parents. Having held itself out to the public, and to the Plaintiffs, as the manufacturer of the ground beef products it sells, the Defendant Whole Foods is also the apparent manufacturer of the adulterated

ground beef that caused the death of Joshua Kaye and the resulting injuries to his parents.

57. The Rain Crow Ranch Defendants are the manufacturers of the meat products that it sold to Whole Foods for the manufacture of ground beef and other retail meat products.

58. In manufacturing the meat products that each Defendant sold, the Defendants failed to act as the ordinary, reasonably prudent manufacturer would under the same or similar circumstances. More specifically, in manufacturing and selling meat products contaminated with *E. coli* O157:H7, the Defendants failed to exercise ordinary and reasonable care to ensure that their products do not expose consumers to unreasonable risks about which the Defendant both knew and should have known.

59. More specifically, in manufacturing the meat products that each Defendant sold, the Defendants owed the Plaintiffs—and all of their respective customers generally—a duty to manufacture and sell meat products that were safe, wholesome, fit for human consumption, neither defective nor unreasonably dangerous, and not otherwise contaminated with *E. co*li O157:H7, and thus adulterated as a matter of federal law. In failing to takes the steps necessary, and required by law, to prevent the manufacture and sale of adulterated meat products to the Plaintiffs, and the public generally, the Defendants acted in a negligent manner.

60. By their negligence, the Defendants caused the death of Joshua Kaye and the pain, suffering, and other injuries that this death caused to his parents, Melissa and Andrew Kaye.

**COUNT V – GROSS NEGLIGENCE AND RECKLESS CONDUCT**

61. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

62. The Defendants' conduct as described herein constitutes gross negligence and reckless conduct which entitles Plaintiffs to an award of punitive damages against the Defendants for their conduct which caused the severe injuries, conscious pain and suffering, and death of Joshua Kaye.

**DAMAGES COUNT VI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

63. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

64. As a result of breach of warranties and negligence alleged above, the decedent, Joshua Kaye, suffered great physical pain and emotional distress from the onset of his *E. coli* O157:H7 infection in June, 2014 until his death in July, 2014.

65. As a result of the breach of warranties and negligence alleged above, the Plaintiffs, Melissa and Andrew Kaye, witnessed on a daily basis, the physical and emotional suffering of their son, causing them incalculable pain, anguish, physical harm and suffering of their own. As such, the Defendants are liable to the Plaintiffs for their respective emotional distress damages.

**DAMAGES COUNT VII – CONSCIOUS PAIN AND SUFFERING**

66. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

67. The injuries sustained by the decedent, Joshua Kaye, were the direct and proximate result of the Defendants' breach of warranty of merchantability, breach of M.G.L. ch. 93A, failure to act as the ordinary, reasonably prudent manufacturer would under the same or similar circumstances, namely, by manufacturing, processing, marketing, promoting and selling beef adulterated and contaminated with the deadly bacteria *E. coli* O157:H7, and

their failure to ensure that their products do not and would not expose consumers to unreasonable risks about which the Defendants both knew and should have known.

68. As a direct and proximate result of the Defendants' negligence, breach of warranty of merchantability, breach of M.G.L. ch. 93A, and their failure to provide safe, unadulterated and uncontaminated beef, the decedent Joshua Kaye was caused to suffer severe personal injuries, conscious pain and suffering, and emotional anguish and death.

**DAMAGES COUNT VIII – WRONGFUL DEATH PURSUANT TO M.G.L. ch. 229 § 2**

69. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

70. As a direct and proximate result of the Defendants' negligence, breach of warranty of merchantability, breach of M.G.L. ch. 93A, and their failure to provide safe, unadulterated and uncontaminated beef, the decedent Joshua Kaye was caused to suffer severe personal injuries and died. His parents, Plaintiffs Andrew and Melissa Kaye, are entitled to compensation for the loss of his consortium, services, support, care, assistance, society, comfort and companionship, and to the reasonable medical, funeral and burial expenses incurred.

**DAMAGES COUNT IX – PUNITIVE DAMAGES PURSUANT TO M.G.L. ch. 229§2 and M.G.L. ch. 93A**

71. By this reference, the Plaintiffs incorporate all of the allegations set forth above as if fully set forth here in support of this cause of action.

72. As a direct and proximate result of the Defendants' negligence, breach of warranty of merchantability, breach of M.G.L. ch. 93A, and their failure to provide safe, unadulterated and uncontaminated beef, the decedent Joshua Kaye was caused to suffer severe personal injuries, conscious pain and suffering, and emotional anguish and death.

73. As a direct and proximate result of the Defendants' negligence, breach of warranty of merchantability, breach of M.G.L. ch. 93A, and their failure to provide safe, unadulterated and uncontaminated beef, the Plaintiffs, Andrew and Melissa Kaye, were caused to suffer extreme emotional distress, to witness their son, Joshua Kaye's suffering, conscious pain and suffering, emotional anguish, and death, and now suffer the loss of their son. In addition, the Plaintiffs are entitled to recover punitive damages for the Defendants' gross negligence, recklessness, and breach of M.G.L. ch. 93A and M.G.L. ch. 229 §2.

74. This is a claim for punitive damages as permitted by the wrongful death statute, M.G.L. ch. 229 §2, and by M.G.L. ch. 93A based on the gross negligence and reckless behavior of the Defendants.

WHEREFORE, the Plaintiffs demand judgment against the Defendants in an amount constituting punitive damages in addition to those damages compensating them for their injuries, damages, and losses including interest, attorneys' fees, related costs, multiple damages and any other relief as this Court deems just.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

a. That the court award the Plaintiffs judgment against the Defendants, in such sums as shall be determined to the full extent allowable under the law for all general, special, incidental and consequential damages respectively incurred by Joshua Kaye and the Plaintiffs as the direct and proximate result of the acts and omissions of the Defendants;

b. That the court award the Plaintiffs their respective costs, disbursements and reasonable attorneys' fees incurred;

c. That the court award the Plaintiffs punitive damages of double or treble the damages, and attorneys' fees, as provided by M.G.L. ch. 93A and in accordance with the wrongful death statute, M.G.L. ch. 229 §2.

d. That the court award the Plaintiffs the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

e. That this Honorable Court award such other and further relief as it deems necessary and equitable under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the named-Plaintiffs hereby demand trial by jury on all issues so triable.

Respectfully submitted,

The Plaintiffs,
Melissa and Andrew Kaye, Individually and as the Administrators of the Estate of Joshua Kaye
By their attorneys,

Patrick T. Jones

Patrick T. Jones, BBO # 253960
PJones@joneskell.com
Timothy C. Kelleher III, BBO # 556624
TKelleher@joneskell.com
Jones Kelleher LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

DATED: 12/15/14